Mary McNamara (CA Bar No. 147131)
Britt Evangelist (CA Bar No. 260457)
**SWANSON & MCNAMARA LLP**
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010
mary@smllp.law
britt@smllp.law

Jaimie L. Nawaday (*pro hac vice*)
Philip Moustakis (*pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1220
Facsimile: (212) 480-8421
nawaday@sewkis.com
moustakis@sewkis.com

*Attorneys for Defendant Abraham Shafi and Relief Defendant Barbara Woortmann*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 4:24-cv-04636-YGR |
| Plaintiff, | **DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT** |
| vs. | Judge: Hon. Yvonne Gonzalez Rogers |
| ABRAHAM SHAFI, | Date: April 14, 2025 |
| Defendant. | |
| and | |
| BARBARA WOORTMANN, | |
| Relief Defendant. | |

Defendant Abraham Shafi ("Shafi") by and through his attorneys, for his answer to Plaintiff Securities and Exchange Commission's ("SEC") Complaint, states as follows:

1. Shafi admits that he co-founded IRL and led it as its Chief Executive Officer until April 2023. Shafi denies the remaining allegations in Paragraph 1.

2. Shafi admits that he described IRL as an app that attracted 12 million users, had a high rank in the Apple App Store, and had significant organic growth. Shafi admits that "incent" advertisements are advertisements that offer users incentives to download the app and that IRL spent money on incent advertisements. Shafi denies the remaining allegations in Paragraph 2.

3. Shafi denies the allegations in Paragraph 3.

4. Shafi admits that, prior to the 2021 offering, he and his then-fiancée, Barbara Woortmann ("Woortmann") charged personal expenses to IRL business credit cards that covered a range of items, and that he typically used IRL's bank account to pay the monthly balances on the credit cards but states that he reimbursed IRL for such charges. Shafi admits Woortmann was never formerly an employee or contractor of IRL, but states that she did voluntarily assist Shafi in administrative tasks during the early days of IRL. Shafi denies the remaining allegations in Paragraph 4.

5. Shafi admits that IRL raised a total of about $170 million in stock in connection with its "Series C" private offering, that lead investor "VC1" purchased about $125 million worth of IRL securities from IRL and about $7.5 million worth of IRL securities directly from Shafi, and that "VC2" purchased about $10 million worth of IRL securities from IRL. Shafi denies the remaining allegations in Paragraph 5.

6. Shafi admits that, after the Series C offering, IRL investors held seats on IRL's Board of Directors. Shafi admits that, after the Series C offering, he and Woortmann charged personal expenses to IRL's business credit cards, including charges related to their April 2022 wedding, but states that he regularly reimbursed IRL for such charges. Shafi denies the remaining allegations in Paragraph 6.

7. Shafi admits that a Special Committee of IRL's Board of Directors removed him

as CEO, in late April 2023, citing his use of the IRL business credit cards.  Shafi also admits that, after his removal and following several outages of the app under new management, IRL's user population collapsed.  Shafi admits that IRL's Board of Directors voted to dissolve the Company.  Shafi denies the remaining allegations in Paragraph 7.

8. Shafi denies the allegations in Paragraph 8.

9. Shafi admits that this Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367.  Shafi denies any violation of the Securities Act or the Exchange Act.

10. Shafi admits that this Court has subject matter jurisdiction of this action but denies the commission of any securities violations.

11. Shafi admits that this Court has subject matter jurisdiction of this action but denies the commission of any securities violations.

12. Shafi denies the commission of any securities violations.  Shafi does not challenge venue in this Court.  Except as expressly admitted, Shafi denies the remaining allegations in Paragraph 12.

13.  Shafi denies the commission of any securities violations.  Shafi does not challenge the assignment to the Oakland Division.  Except as expressly admitted, Shafi denies the remaining allegations in Paragraph 13.

14. Shafi admits that he resides in Pepeekeo, Hawaii, co-founded IRL, and was CEO until April 2023.

15. Shafi admits that Barbara Woortmann resides in Pepeekeo, Hawaii and is his wife.

16. Shafi admits that Get Together, Inc. is a Delaware corporation and that its principal place of business post-Series C was in Berkeley, CA.

17. Shafi admits the allegations in Paragraph 17.

18. Shafi admits that IRL began using "incent" advertisements in or around September 2019 and that an incent advertisement is an ad that offers users a reward in exchange for downloading the advertised app.  Shafi admits that such reward could take the form, for example, of extra "lives" or "gems" to use in a game in exchange for a second app that is unrelated to the

DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT                    CASE NO.: 4:24-CV-04636-YGR

1  game. Shafi denies the remaining allegations in Paragraph 18.

2       19.    Shafi admits that incent ads are a lower cost form of ads that, on information and

3  belief, can drive downloads and that the cost per download through incent ads is typically lower

4  than traditional online advertising. Shafi lacks knowledge or information sufficient to form a

5  belief about the truth of the remaining allegations in Paragraph 19.

6       20.    Shafi admits that IRL began using incent ads in or around September 2019 and

7  that he sought to achieve large download volumes and achieve a high rank in the Apple App

8  Store, which leads to more people discovering the app and more organic growth. Shafi lacks

9  knowledge or information sufficient to form a belief about the truth of the remaining allegations

10 in Paragraph 20.

11      21.    Shafi admits that IRL spent, in the aggregate, millions of dollars on incent ads

12 between 2019 and 2021 and that during that period, IRL at times ranked in the top 20 of social

13 media apps in the Apple App Store. Shafi admits that he wanted IRL to achieve a high rank in

14 the Apple App Store, which leads to more people discovering the app and more organic growth.

15 Shafi lacks knowledge or information sufficient to form a belief about the truth of the remaining

16 allegations in Paragraph 21.

17      22.    Shafi admits that he relied on Individual 1 to handle the invoices for IRL's

18 principal incent advertising platform (the "Incent Ad Platform"). Shafi admits that the Incent Ad

19 Platform regularly sent invoices for incent advertisements to Individual 1, who then paid the

20 invoices on IRL's behalf. Shafi lacks knowledge or information sufficient to form a belief about

21 the truth of the remaining allegations in Paragraph 22.

22      23.    Shafi admits that he relied on the Agency to handle the invoices for incent

23 advertisements. Shafi denies the remaining allegations in Paragraph 23.

24      24.    Shafi admits the allegations in the first three sentences of Paragraph 24. Shafi

25 admits that Woortmann was never formally an employee or contractor of IRL, but states that she

26 assisted him in the early days of IRL.

27      25.    Shafi admits that he and Woortmann used the IRL credit cards for certain personal

28

DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT     CASE NO.: 4:24-CV-04636-YGR

expenses between 2019 and 2022, but states that he reimbursed IRL for such charges. Shafi admits that some of the personal expenses included items listed in the third sentence of Paragraph 25. Shafi currently lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25.

26.  Shafi admits that between 2019 and 2022, he made payments to the IRL business card account using funds from IRL's bank account, but states that he reimbursed IRL for such charges. Shafi also admits that he made a $150,000 payment in April 2021 against the credit card account balance using funds from his personal bank account. Shafi denies the remaining allegations of Paragraph 26.

27.  Shafi admits that, from at least March through June of 2021, IRL communicated with VC1, VC2, and other entities about investments in IRL. The second sentence of Paragraph 27 contains legal conclusions as to which no response is required.

28.  Shafi admits that he described IRL as an app that achieved impressive organic growth and achieved a high rank in the Apple App Store. Shafi denies the remaining allegations of Paragraph 28.

29.  Shafi admits that a "Spend Summary" was made available in a data room for investors. That document speaks for itself. Shafi admits that in the spring of 2021, IRL's spending on the Incent Ad Platform increased to hundreds of thousands of dollars per month. Shafi currently lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 29.

30.  To the extent that Paragraph 30 purports to quote from a documented conversation, Shafi responds that the document speaks for itself. Except as expressly admitted, Shafi denies the remaining allegations in Paragraph 30 and denies any allegations or suggestion of wrongdoing in the document.

31.  To the extent that Paragraph 31 purports to quote from a document, Shafi responds that the document speaks for itself. Except as expressly admitted, Shafi denies the remaining allegations in Paragraph 31 and denies any allegations or suggestion of wrongdoing in the

DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT        CASE NO.: 4:24-CV-04636-YGR

1  document.

2  32.  Paragraph 32 purports to quote from written chat discussions that speak for
3  themselves.  Shafi denies the remaining allegations of Paragraph 32.

4  33.  Paragraph 33 purports to summarize a slide presentation, which speaks for itself.
5  Shafi lacks knowledge or information sufficient to form a belief as to the truth of the remaining
6  allegations of Paragraph 33.

7  34.  Paragraph 34 purports to quote from certain emails that speak for themselves.
8  Shafi denies the remaining allegations of Paragraph 34.

9  35.  Shafi denies the allegations in Paragraph 35.

10 36.  Shafi admits that in or around April 2021, he told a representative of VC1 that he
11 had received a term sheet from another prospective investor.  Shafi denies the remaining
12 allegations in Paragraph 36.

13 37.  Paragraph 37 purports to describe the content of the Preferred Stock Purchase
14 Agreement ("PSPA"), which speaks for itself.

15 38.  Paragraph 38 purports to describe the content of the PSPA, which speaks for itself.
16 Shafi denies the remaining allegations in Paragraph 38.

17 39.  Paragraph 39 purports to describe the content of the PSPA, which speaks for itself.
18 Shafi denies the remaining allegations in Paragraph 39.

19 40.  Paragraph 40 purports to describe the content of the PSPA, which speaks for itself.
20 Shafi denies the remaining allegations in Paragraph 40.

21 41.  Shafi admits that he did not discuss his or Woortmann's charging of personal
22 expenses on IRL's business credit cards with potential investors in the spring of 2021 and states
23 that he was asked no questions that would have prompted such a discussion. Shafi denies the
24 allegations in Paragraph 41 to the extent that they suggest that information that "should have been
25 disclosed" to investors was not.

26 42.  Shafi admits that a Special Committee of IRL's Board of Directors, which
27 included representatives from VC1 and VC2, suspended him as CEO, citing his use of the IRL

28

business credit card.  Shafi denies the remaining allegations of Paragraph 42.

43. Paragraph 43 purports to describe the content of the PSPA which speaks for itself. Shafi denies the remaining allegations in Paragraph 43.

44. Paragraph 44 purports to describe the content of the PSPA which speaks for itself. Shafi denies the remaining allegations in Paragraph 44.

45. Shafi admits that after the Series C offering closed, he raised his salary.  Shafi admits that he did not discuss this salary raise in advance with the Board of Directors.  Shafi denies the remaining allegations of Paragraph 45.

46. Shafi admits that he hired Individual 2 as IRL's "Director of Growth" following the Series C and that Individual 2 was responsible for managing growth of the user base.  Shafi also admits that IRL continued a relationship with the Agency and that the Agency continued to manage invoices from the Incent Ad Platform and other advertising platforms.  Shafi lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46.

47. Shafi admits that in or around August 2021, IRL hired its first Chief Financial Officer ("CFO") and that the CFO asked Individual 2 to create monthly invoices describing the services that the Agency was providing to IRL.  Shafi lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47.

48. Shafi denies the allegations of Paragraph 48.

49. Shafi denies the allegations of Paragraph 49.

50. Shafi admits that the Agency's invoices incorrectly allocated the majority of the Agency's charges to "Infra Cost," and that for a period of time, financial reports overstated the amount of money IRL spent on infrastructure and understated the amount of money IRL spent on marketing and advertising.  Shafi denies the remaining allegations of Paragraph 50.

51. Shafi admits that IRL's 2021 expenses overstated the amount spent on infrastructure and understated the amount spent on growth.  Paragraph 51 purports to summarize financial reports that speak for themselves.  Shafi denies the remaining allegations of Paragraph

1  51.

2  52.    Shafi admits that, after the Series C offering closed, he and Woortmann continued to use IRL's business credit cards to pay for certain personal expenses, including some for their April 2022 wedding, but states that he reimbursed IRL for such charges. Shafi denies the remaining allegations of Paragraph 52.

53.    Shafi admits that in 2021 the CFO noted what appeared to be personal expenses on IRL's business credit card account statements, which Shafi confirmed. Shafi denies that the CFO "confronted" him in any way. Shafi admits that he agreed to pay back the expenses that he admitted were personal in nature.

54.    Shafi admits that he communicated that some of the expenses the CFO asked about were genuine business expenses and that he neglected to provide the requested receipts for all such expenses. Shafi denies the remaining allegations of Paragraph 54 and any suggestion that anything was hidden from the CFO.

55.    Shafi admits that he and Woortmann continued to charge personal expenses on the IRL business credit cards after his discussion with the CFO, but states that he did so with the CFO's knowledge and the CFO documented such charges. Shafi denies the remaining allegations of Paragraph 55 and any suggestion that anything was hidden from the CFO.

56.    Shafi admits the first sentence of Paragraph 56. Shafi denies the remaining allegations in the second sentence of Paragraph 56. Shafi admits the charges listed in Paragraphs 56.a. were personal charges, but states that he reimbursed IRL for such charges. Shafi lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56.

57.    Shafi admits that a Special Committee of IRL's Board of Directors suspended him in April 2023, citing the personal expenses on IRL's business credit cards. Shafi denies the remaining allegations of Paragraph 57.

58.    Shafi admits that shortly after his suspension, the IRL app suffered a series of severe outages and a resulting drop in the number of users. Shafi admits that the Special

Committee directed a third party to "confirm the presence of bot accounts" on the IRL platform. Paragraph 58 purports to summarize a report of that third party, and the report speaks for itself.

59. Shafi incorporates herein the admissions and denials as to Paragraphs 1 through 58 by reference, as if set forth fully herein.

60. Shafi denies the allegations in Paragraph 60.

61. Shafi denies the allegations in Paragraph 61.

62. Shafi incorporates herein the admissions and denials as to Paragraphs 1 through 58 by reference, as if set forth fully herein.

63. Shafi denies the allegations in Paragraph 63.

64. Shafi denies the allegations in Paragraph 64.

65. Shafi incorporates herein the admissions and denials as to Paragraphs 1 through 58 by reference, as if set forth fully herein.

66. Shafi denies the allegations in Paragraph 66.

## AFFIRMATIVE DEFENSES[*]

### FIRST AFFIRMATIVE DEFENSE

67. The Complaint fails to state a cause of action against Shafi upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

68. Plaintiff is not entitled to any recovery because the representations at issue did not contain any false or misleading statements of material fact or omissions of material fact in connection with a securities transaction.

### THIRD AFFIRMATIVE DEFENSE

69. Plaintiff is not entitled to any recovery because the allegedly false or misleading statements at issue were not material to the investment decisions of VC1 or VC2, or a reasonable investor.

---

[*] The inclusion of any of the following affirmative defenses is not a concession that Shafi bears the burden of proof on any of them.

- 9 -

**FOURTH AFFIRMATIVE DEFENSE**

70. Plaintiff is not entitled to recovery because the Complaint fails to allege Shafi employed any device, scheme, or artifice to defraud, or engaged in any act, practice, or course of business which operated as a fraud or deceit upon any person in connection with a securities transaction.

**FIFTH AFFIRMATIVE DEFENSE**

71. Plaintiff is not entitled to any recovery because Shafi neither owed nor breached any duty to Plaintiff to disclose information allegedly omitted from the statements at issue.

**SIXTH AFFIRMATIVE DEFENSE**

72. Plaintiff is not entitled to any recovery because Shafi at all times acted in good faith and neither knew nor was reckless in not knowing that any alleged statement or omission were false or misleading.

**SEVENTH AFFIRMATIVE DEFENSE**

73. Plaintiff is not entitled to any recovery because Shafi had reasonable grounds to believe and did believe that the statements at issue were true and that there was no omitted material fact necessary to make those statements not misleading.

**EIGHTH AFFIRMATIVE DEFENSE**

74. Shafi is informed and believes, and on that basis asserts, that Plaintiff is not entitled to any recovery from Shafi because VC1 and VC2 invested with actual or constructive knowledge of the risks involved, and thus assumed the risk that the value of its investment would decline if those risks materialized.

**RESERVATION OF ADDITIONAL DEFENSES**

75. Shafi reserves the right to raise any additional defenses, cross-claims, and third-party claims not asserted herein of which he may become aware through discovery or other investigation, or as may be appropriate at a later time.

DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT   CASE NO.: 4:24-CV-04636-YGR

# PRAYER FOR RELIEF

WHEREFORE, Defendant Abraham Shafi respectfully requests that the Court:

1. Dismiss Plaintiff's claims with prejudice;
2. Award Shafi costs and attorneys' fees as permitted by law;
3. Grant Shafi any other relief the Court deems just and proper.

Dated: April 14, 2025

Respectfully Submitted,

By: /s/ *Jaimie L. Nawaday*

Jaimie L. Nawaday (*pro hac vice*)
Philip Moustakis (*pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1604
Facsimile: (212) 480-8421
nawaday@sewkis.com
moustakis@sewkis.com

Mary McNamara (CA Bar No. 147131)
Britt Evangelist (CA Bar No. 260457)
**SWANSON & MCNAMARA LLP**
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010
mary@smllp.law
britt@smllp.law

*Attorneys for Defendant Abraham Shafi and Relief Defendant Barbara Woortmann*

**PROOF OF SERVICE**

I, the undersigned, declare:

    I am a partner at Seward & Kissel LLP. I am over the age of 18 and not a party to the within action; my business address is One Battery Park Plaza, 21st Floor, New York, New York 10004.

    On April 14, 2025, I served the foregoing document(s) described as follows:

**Defendant Abraham Shafi's Answer to the Complaint**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

<u>XX</u> BY ELECTRONIC MAIL

    I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail as indicated on the attached service list.

    Executed on April 14, 2025, at New York, New York.

  Jaimie L. Nawaday                              */s/ Jaimie L. Nawaday*
(Type or Print Name)                          (Signature)

**SERVICE LIST**

Matthew Meyerhofer (meyerhoferm@sec.gov)
Pat Huddleston (huddlestonp@sec.gov)
Christopher Baldwin Marshall (Marshallch@sec.gov)
Jason H. Lee (leejh@sec.gov)
Marc David Katz (katzma@sec.gov)
Monique C. Winkler (winklerm@sec.gov)

SECURITES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94101

*Attorneys for Plaintiff*

- 13 -

DEFENDANT ABRAHAM SHAFI'S ANSWER TO THE COMPLAINT        CASE NO.: 4:24-CV-04636-YGR

**ATTESTATION OF CONCURRENCE**

I am the ECF user whose ID and password are being used to file this Defendant Abraham Shafi's Answer to the Complaint. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

Dated: April 14, 2025

By */s/ Jaimie L. Nawaday*
Jaimie L. Nawaday

Counsel on behalf of Defendant Abraham Shafi